**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**No. 00-CR-365 (JMR)**

---

United States of America,

Plaintiff,

vs.

Michael Alan Mooney,

Defendant.

**DEFENDANT'S REPLY TO GOVERNMENT'S MEMORANDUM OPPOSING FOURTH MOTION FOR RELEASE PENDING APPEAL**

---

## INTRODUCTION

Defendant Michael Alan Mooney, by and through his undersigned appointed counsel, respectfully submits this Reply to the Government's Memorandum opposing his release pending appeal. The Government agrees with the fundamental concept in this matter: There exists grave uncertainty as to whether the sentencing procedures in Mr. Mooney's case pass constitutional and legal muster. Under the applicable legal standard, this Court must assume that this uncertainty will be resolved in favor of Mr. Mooney. Accordingly, Mr. Mooney respectfully requests release pending the outcome of his appeal.

## LEGAL ARGUMENT

Although the Government's brief does not explain the applicable standard for this Court's decision, its citations to 18 U.S.C. § 1343(b) and United States v. Powell, 761 F.2d 1227 (8th Cir. 1985) would suggest acknowledgement of the correct standard. That is, this Court must: (I.) determine whether Mr. Mooney has shown a "substantial question" in his appeal "in the sense that it is a close question or one that could go either way"; and (II.) if so, determine whether the substantial question raised by Mr. Mooney is integral to length of his sentence, such that reversal



MPLS-Word 72151.1

will result in a lesser sentence if the matter is decided in Mr. Mooney's favor. Id. at 1233-34. As explained below, both questions must be answered in the affirmative. The Government is unable to generate convincing counter-arguments, but rather relies on conclusory assertions. For these reasons, Mr. Mooney should be released as soon as possible, pending the outcome of the Eighth Circuit's en banc decision in his case.

**I. Mr. Mooney has raised "substantial questions" on his appeal.**

The Eighth Circuit Court of Appeals has made it clear that a defendant raises a "substantial question" worthy of his release if "the question is close, one that could go either way." Powell, 761 F.2d at 1232. Specifically, Mr. Mooney has identified the "close question" as to whether this Court inadvertently violated the Sixth Amendment in finding sentence-enhancing facts which were not submitted to the jury. See Blakely v. Washington, 124 S. Ct. 2531 (2004).

***A. There exists a "substantial question" as to whether this Court inadvertently violated the Sixth Amendment in imposing Mr. Mooney's sentence.***

As this Court is well aware, the United States Supreme Court has held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63 (2000). In accordance with this principle, the Court recently invalidated the State of Washington's sentencing guidelines system insofar as that system permits judges—not juries—to decide facts which increase a criminal defendant's term of imprisonment (i.e., sentence-enhancing facts). Blakely, 124 S. Ct. at 2537-38. The Court held that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Id. at 2537 (emphasis in original). The

Supreme Court is currently considering how these concepts apply to the Federal Sentencing Guidelines, i.e., whether the Sixth Amendment prohibits judge-made findings of fact that enhance a defendant's sentence. United States v. Booker, 375 F.3d 508 (7th Cir. 2004), cert. granted, 125 S. Ct. 11 (2004); United States v. Fanfan, 2004 WL 1732114 (D. Me. June 28, 2004), cert. granted, 125 S. Ct. 12 (2004). This is the source of the "substantial question" surrounding the legality of Mr. Mooney's sentence.

*1. The Court's findings of fact as to sentence-enhancing factors.*

In Mr. Mooney's case, there is no real dispute that this Court made findings of fact—which were neither reflected in the jury verdict nor admitted by Mr. Mooney—in increasing Mr. Mooney's sentence.

In sentencing Mr. Mooney, this Court adopted, in full, the findings of the probation office as articulated in the Presentence Investigation Report ("PSR"). (S. Tr., pp. 5-9.)[1] The Court used the Guidelines Manual in effect in November 1994, rather than that in effect in 2001, based upon the probation office's analysis. (PSR, pp. 9-12.) And the Court specifically adopted the probation office's sentencing-enhancing findings as follows:

| | |
|---|---|
| **Counts 1-8, Mail Fraud** | "The U.S. Mail was used to facilitate the securities fraud which resulted in an overall illegal gain of at least $274,000." **(+8)**<br><br>"[T]he offense involved more than minimal planning . . ." **(+2)**<br><br>"[Mr. Mooney] abused [a] position of special trust . . ." **(+2)** |

[1] The notation "S. Tr., p. __" refers to the Sentencing Transcript in this matter. (Dkt. No. 110.)

| | |
|---|---|
| **Counts 9-12, Securities Fraud** | "The defendant participated in numerous securities transactions using insider information which resulted in an overall illegal gain of at least $274,000." **(+8)**<br><br>"[Mr. Mooney] significantly facilitated this scheme by abusing [a] position of special trust . . ." **(+2)** |
| **Counts 13-17, Money Laundering** | "The defendant participated in various monetary transactions involving proceeds from specified unlawful criminal activity. At least $274,000 in illegal proceeds can be attributed to the defendant." **(+2)** |

(PSR, pp. 10-12; S. Tr., pp. 5-9.)

As made clear by the principles articulated in Apprendi and Blakely, such judge-made findings of fact likely violated Mr. Mooney's Sixth Amendment rights.[2] This substantial likelihood far surpasses the bar for Mr. Mooney's release, which merely requires a "close question" or "one that could go either way." Powell, 761 F.2d at 1232. This should be the end point of the analysis, and the Court should grant Mr. Mooney release pending the outcome of his appeal.

*2. The likely application of Blakely to the Federal Sentencing Guidelines.*

The Government attempts to down-play the effect of Blakely on the federal sentencing landscape, arguing that Mr. Mooney should not be released because there is a "mere possibility" of revisions that will affect Mr. Mooney's sentence. (Dkt. No.116, p. 2.) There is a short response and a long response, both of which are fatal to this position. The short response is that, under the correct legal standard articulated above, even a "mere possibility" would raise a

[2] The undersigned does not fault this Court for being unable to divine this development at the time of Mr. Mooney's sentencing. However, the fact remains that Mr. Mooney has raised the issue on direct appeal, and therefore Mr. Mooney is entitled to the benefit of the rule. Griffith v. Kentucky, 479 U.S. 314, 328, 107 S. Ct. 708, 716 (1987).

substantial question that could go either way, meaning that the Government effectively concedes that Mr. Mooney ought to be set free pending resolution of the issue. Powell, 761 F.2d at 1232. The longer response is that, for the numerous reasons outlined below, the Government far understates the uncertainty of the current situation.

First, it is important to recognize that the Government makes almost no attempt to explain why Blakely's core holding will not apply to the Federal Sentencing Guidelines. This is because it is nearly impossible to do so, given the structure of the Guidelines and the unequivocal concepts articulated in Blakely, like the following:

> The Framers would not have thought it too much to demand that, before depriving a man of . . . more years of his liberty, the State should suffer the modest inconvenience of submitting its accusations to "the unanimous suffrage of twelve of his equals and neighbours," . . . rather than a lone employee of the State.

124 S. Ct. at 2543. The fact is, in this case, "a lone employee of the State" decided facts which increased Mr. Mooney's sentence, and therefore his sentence likely violates the Sixth Amendment.

Second, while Blakely did not specifically address the Federal Sentencing Guidelines, Justice O'Connor cogently observed that "[t]he structure of the Federal Guidelines does not, as the Government half-heartedly suggests, provide any grounds for distinction [from the State of Washington's unconstitutional guidelines regime]." Id. at 2549. Rather, in discussing the majority's decision, Justice O'Connor predicted that "the hard constraints found throughout chapters 2 and 3 of the Federal Sentencing Guidelines, which require an increase in the sentencing range upon specified factual findings, will meet the same fate." Id. at 2550. This view, as expressed by a sitting Supreme Court Justice, creates a "substantial question" as to whether the Federal Sentencing Guidelines were properly applied in Mr. Mooney's case.

Third, the majority of courts to have thoughtfully analyzed the issue at hand have held that the judicial fact-finding of sentence enhancers cannot survive Sixth Amendment scrutiny. E.g., United States v. Booker, 375 F.3d 508, 515 (7th Cir. 2004), cert. granted, 125 S. Ct. 11 (2004); United States v. Ameline, 376 F.3d 967, 980 (9th Cir. 2004); United States v. Mueffelman, 327 F. Supp. 2d 79, 90 (D. Mass. 2004); United States v. Croxford, 324 F. Supp. 2d 1230, 1242 (D. Utah 2004). Indeed, in this very District, Judge Tunheim recently weighed in with this same view, holding that "if, as in this case, the Guidelines would require the Court to enhance a sentence by finding facts beyond those reflected in a jury verdict or admitted in a plea, the Guidelines are unconstitutional as applied." United States v. Aihe, No. 01-Cr-162, 2004 WL 2434713, p. *2 (D. Minn. Oct. 15, 2004).[3]

Finally, even the Government does not believe its own rhetoric. For instance, the United States Attorney's Office for this District now files indictments which specifically allege Sentencing Guidelines enhancing facts, indicating that such issues will be submitted for decision by the jury. E.g., United States v. Clarke, et al., No. 04-CR-18 (D. Minn.) (Superseding Indictment, Dkt. No. 126). This, of course, means that the Government anticipates that the Supreme Court will rule that the Sixth Amendment requires jury determination of sentence enhancers under the Federal Guidelines—a fair evaluation given the weight of existing authority, discussed above.

[3] It is true, as the Government points out, that some Circuit Courts of Appeal have directed lower courts to continue sentencing under the Guidelines, pending further guidance from the United States Supreme Court. See, e.g., United States v. Mincey, 380 F.3d 102, 106 (2d Cir. 2004). However, what the Government fails to mention is that these same courts have taken a "wait-and-see" approach, leaving open the possibility that the Supreme Court will hold that judicial fact-finding of sentence enhancers is unconstitutional. Id. ("The mandate in this case will be held pending the Supreme Court's decision in Booker and Fanfan."); United States v. Hammoud, 378 F.3d 426, 426 (4th Cir. 2004) ("In the interest of judicial economy, however, and pending a definitive ruling by the Supreme Court, we recommend that district courts within the Fourth Circuit also announce, at the time of sentencing, a sentence pursuant to 18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2004), treating the guidelines as advisory only."); United States v. Koch, No. 02-6278, 2004 WL 1870438, p. *1 (6th Cir. 2004) (same). This situation supports Mr. Mooney's position. These courts have expressed uncertainty as to the continued viability of the Federal Sentencing Guidelines, and have implicitly recognized that this uncertainty may well be resolved against the Government and in favor of defendants such as Mr. Mooney.

In sum, the Government cannot rely on its faint hopes to argue in favor of Mr. Mooney's continued incarceration. The law, as stated in Powell, merely requires that Mr. Mooney raise a substantial question as to whether his current sentence is legally erroneous. He has clearly done so here, and the Government provides no authority to suggest otherwise.

***B. There exists a "substantial question" as to whether this Court correctly calculated the sentencing enhancers applied to Mr. Mooney, and imposed a legally erroneous sentence upon Mr. Mooney.***

The Government also takes the bizarre position that Mr. Mooney's "convictions have now been affirmed and all of his previous guideline sentencing arguments have been rejected by the Court of Appeals panel decision."[4] (Dkt. No. 116, p. 3.) This assertion is flat-out wrong. The Government knows perfectly well that the Eighth Circuit's decision, United States v. Mooney, No. 02-3388 (8th Cir. July 23, 2004), was vacated in full.[5] This, of course, means that Mr. Mooney's conviction has not been affirmed by the Eighth Circuit Court of Appeals, nor have Mr. Mooney's issues on appeal "been resolved against him." Backman v. Polaroid Corp., 910 F.2d 10, 14 (1st Cir. 1990) (vacated panel opinion has no force before en banc Court of Appeals).

There is some value in reviewing the Eighth Circuit panel's vacated decision for the limited purpose of determining whether there exists a "substantial question" of law raised by Mr. Mooney in his appeal. For example, Mr. Mooney has argued that this Court miscalculated his "gain resulting from the offense" in imposing a sentence upon him. Judge Bright, in dissent,

---

[4] Again, the Government asserts inconsistent positions. On one hand, the Government argues that this Court should ignore the Mooney panel's decision that Blakely applies to the Federal Sentencing Guidelines, a decision that would require a remand to this Court for resentencing. On the other hand, the Government urges this Court to consider the panel's other holdings as binding authority for the purposes of Mr. Mooney's plea for release pending appeal. This is ad hoc reasoning by the prosecutor. In truth, because the entire panel opinion was vacated, Mr. Mooney's non-Blakely arguments on appeal survive, and ought to be considered by this Court in the calculus for release pending appeal.

[5] The only exception is that the Eighth Circuit did not vacate its mandate that this Court immediately consider Mr. Mooney's motion for release pending appeal. (8th Cir. Dkt., p. 10.)

stated that "Mooney's . . . gain should be calculated . . . based on the gain in market price when the public learned of the merger . . . ." United States v. Mooney, No. 02-3388, slip op., p. 27 (8th Cir. July 23, 2004). This means that, when the en banc Court of Appeals considers Mr. Mooney's case, there will likely be at least one vote for this same proposition, and the en banc Court may well decide this issue in favor of Mr. Mooney.

This would stand to reason, as the plain language of the Guideline appears to dictate this result, U.S.S.G. § 2B1.4, and the only analogous authority suggests that this is, indeed, the correct result. See, e.g., 15 U.S.C. § 78u-1(f) (providing that "profit gained" or "loss avoided" is the "difference between the purchase or sale price of the security and the value of that security as measured by the trading price of the security a reasonable period after public dissemination of the non-public information") (emphasis added); S.E.C. v. MacDonald, 699 F.2d 47, 53-55 (1st Cir. 1983) (same). See also Nye v. Blyth Eastman Dillon & Co., 588 F.2d 1189, 1198 (8th Cir. 1978) (relevant date in inside trading case is the date a defrauded investor no longer relied on inside trader's misrepresentations). At a minimum, this also presents a "substantial question" which, if resolved in Mr. Mooney's favor, would result in a much-reduced sentence, as set forth below. Powell, 761 F.2d at 1232.

## II. The "substantial questions" in Mr. Mooney's case are integral to Mr. Mooney's sentence, such that, if resolved in his favor, he is now serving a legally erroneous sentence.

Mr. Mooney has already submitted potential Blakely-compliant sentencing calculations to this Court. However, both the Government in its Memorandum and this Court orally have expressed skepticism that Mr. Mooney's sentence would be much reduced in a Blakely-compliant Sentencing Guidelines regime. The discussion herein shows that, depending on how

the United States Supreme Court and/or en banc Eighth Circuit Court of Appeals rules, it is likely that Mr. Mooney has already served an unlawfully lengthy sentence.

***A. Mr. Mooney's Blakely-compliant sentence is less than the term of imprisonment that he has already served, meaning that he is in the midst of an unlawful sentence.***

As discussed above, there exists a substantial likelihood that the Eighth Circuit Court of Appeals will rule that this Court's sentence-enhancing findings of fact, supra Part I.A.1, are unconstitutional. If this comes to pass, then the Eighth Circuit must remand to this Court for resentencing, and the Court will only be permitted to base its sentence upon those facts "admitted by" Mr. Mooney or "found by the jury." Blakely, 124 S. Ct. at 2537. Further, on resentencing, Mr. Mooney will be entitled to a sentence based upon the Guidelines version—either at the time of sentence or at the time the crime was committed—that is more favorable to him. United States v. Comstock, 154 F.3d 845, 850 (8th Cir. 1998).

In accordance with these logical principles, the undersigned respectfully directs the Court's attention to the attached sentencing calculations. (Def. Release Exs. 1-3.)

Exhibit 1 shows the Court's original sentencing calculus, and also points out the sentence-enhancing findings of fact, which would be rendered unconstitutional if Blakely is applied to the Federal Guidelines.

Exhibit 2 shows how the Court may calculate Mr. Mooney's sentence, absent the arguably unconstitutional findings of fact, supra Part I.A.1. The calculation in Exhibit 2, however, makes the presumption that the jury can be said to have found $70,000.00 in loss based upon the forfeiture verdict, a debatable position that is favorable to the Government. See infra, Part II.B.4. Even giving the Government the benefit of the doubt in this manner, Mr. Mooney's maximum sentence would be 24 months, a term of confinement that he has already exceeded.

Finally, Exhibit 3 does not give the Government the benefit of the doubt, and presumes that the jury's $70,000 forfeiture verdict cannot be equated with the "value of laundered funds," within the meaning of the Guidelines. U.S.S.G. § 2S1.1(a)(2). As can be seen from the calculation, a Blakely-compliant maximum sentence would be a mere 10 months, meaning that Mr. Mooney has already served more than an additional year in confinement. If this turns out to be the situation we face here, then it is doubly critical that this Court order Mr. Mooney's immediate release.

***B. The Government has failed to show how the existing jury verdict supports Mr. Mooney's sentence in a Blakely-compliant sentencing regime.***

The Government contends that, assuming that the Supreme Court meant what it said in Blakely, then Mr. Mooney's continued incarceration is justified by the jury's findings. (Dkt. No. 116, pp. 13-17.) In particular, the Government contends that Mr. Mooney's "Blakely-proof" sentencing range is 24-30 months, based upon his money laundering conviction alone.[6] (Dkt. No. 116, p. 15.) Once again, however, the Government cites no authority for its position, and merely makes conclusory assertions, which are not supported in the record or by existing legal authority. The undersigned will respond to the Government's arguments below, one-by-one. Moreover, it must be noted that the Government's argument is an attempt to distract the Court from the real issue in this matter—that the uncertainty in Federal Sentencing counsels strongly in favor of releasing Mr. Mooney now, lest we risk keeping a man imprisoned longer than permitted by law.

---

[6] The Government also contends that Mr. Mooney's minimal sentencing range is 30-37 months, based upon the Eighth Circuit's vacated panel decision. As discussed herein repeatedly, it is simply improper for the Government to rely upon the vacated opinion for this proposition.

*1. Mr. Mooney is not locked into this Court's original loss calculations.*

Inexplicably, the Government again relies on the fully vacated Eighth Circuit panel opinion for the proposition the Mr. Mooney is locked into this Court's original loss calculations. (Dkt. No. 116, p. 14-15.) The Government cites no authority for this proposition, because no such authority exists. In point of fact, the Eight Circuit panel's vacated opinion is now a nullity, with no force whatever. E.g., Backman v. Polaroid Corp., 910 F.2d 10, 14 (1st Cir. 1990) (en banc) ("Equally not before us are the findings and conclusions of the panel majority opinion . . . The opinion no longer has standing, except to the extent that we adopt it." (internal punctuation omitted)); see also United States v. Ryan, 41 F.3d 361, 369 (8th Cir. 1994) (Arnold, J., with McMillian, Gibson, and Magill, JJ., concurring in the judgment and dissenting in part) ("Under our practice . . . the order granting the suggestion for rehearing en banc automatically vacates the panel opinion."). Because the panel opinion is vacated, all of the issues that Mr. Mooney has raised in his appeal—including the Blakely issues—remain in play. Id.

It seems as though the Government's entire argument rests on a crumbled foundation, and that is why it is difficult to even formulate a response to the Government's thesis. Nevertheless, bearing in mind this initial fatal flaw, the undersigned will attempt to clarify matters.

*2. Mr. Mooney is not locked into an unfavorable version of the Guidelines.*

The Government claims that Mr. Mooney "assumes" that he can be sentenced under "different, more favorable, guidelines than he originally chose . . ." (Dkt. No. 116, p. 14, n.7.) Mr. Mooney did not "choose" the Guidelines manual employed by the district court in his original sentence. In point of fact, from the beginning, Mr. Mooney has petitioned the Court to use the Guidelines version most favorable to him. (Dkt. No. 82, pp. 3-15.) At sentencing, this Court acknowledged this, stating: "The Court is of a mind and understands that it ought to apply

those guidelines which are most helpful to [Mr. Mooney] in terms of applying the rules of lenity." (S. Tr., p. 5.) Mr. Mooney continued to request this analysis on appeal. (App. Br., p. 28 n.7.)[7]

Use of the most favorable Guidelines manual is required by the United States Constitution, United States v. Reetz, 18 F.3d 595 (8th Cir. 1994), and by the Guidelines themselves. U.S.S.G. § 1B1.11(a), (b)(1) (court may use Guidelines manual in effect at time defendant is sentenced or, if more favorable to the defendant, manual in effect at time offense committed). The Eighth Circuit has held that, where a Court erroneously applies the less favorable version of the Guidelines, the defendant is entitled to resentencing based upon the more favorable version. United States v. Comstock, 154 F.3d 845, 850 (8th Cir. 1998). Accordingly, Mr. Mooney has preserved this issue on appeal, and any resentencing must be based upon the Guidelines manual most favorable to Mr. Mooney. Id.

*3. Mr. Mooney is not locked into the Court's original money laundering base level calculation.*

The Government asserts that Mr. Mooney's base sentencing level with respect to his money laundering conviction would result in a sentence longer than he has currently served. (Dkt. No. 116, p. 15.) But in order to reach this conclusion, the Government must rely on the false assumption that Mr. Mooney is locked into the Court's original use of the 1994 Guidelines Manual. (Id.) As discussed above, Mr. Mooney has consistently argued—both in this Court and on appeal—that the Court must sentence Mr. Mooney based upon the more favorable version of the Guidelines.

[7] In light of these indisputable facts, Mr. Mooney can only conclude the Government is confused, based upon its clearly-false assertion: "The defendant had never before suggested in any pleading that the district court erred by sentencing him under the November 2000 [sic] Sentencing Guidelines. Thus, the defendant has likely waived any objection to the use of those Guidelines." (Dkt. No. 116, p. 17 n.9.) First, this Court used the 1994 version of the Guidelines, not the November 2000 version. (S. Tr., p. 5.) Second, as discussed above, Mr. Mooney has plainly preserved the issue of the correct Guidelines manual, both with this Court and with the Eighth Circuit Court of Appeals.

*4. The jury did not find a particular loss amount or amount of money laundered.*

The Government argues "[i]n each [money laundering] count, it was alleged and the jury necessarily found that the defendant engaged in monetary transactions in criminally derived property in a specific amount," totaling $428,000.00. (Dkt. No. 116, p. 16.) But the jury instructions given by the Court make clear that the jury did not "necessarily find" money laundering in this amount. In fact, the jury instructions given by the Court charged the jury, in five separate counts, must find a "monetary transaction involved criminally derived property of a value greater than $10,000 . . ." (Tr., Vol. VIII, p. 87.)[8] Therefore, if one uses the jury instructions, the jury only "necessarily found" total money laundering of $50,000. If one uses the forfeiture verdict, one <u>might</u> conclude that the jury found only $70,000. Ultimately, both formulations are fundamentally flawed, as the Guidelines require a specific determination of "the value of the laundered funds," U.S.S.G. § 2S1.1(a)(2), and the jury did not have the opportunity to decide this precise question. In any event, at most, the jury found $70,000 in laundered funds, not $428,000, as the Government contends.

*5. Releasing Mr. Mooney does not prejudice the Government's interests.*

A point that seems to have become lost in the debate is that releasing Mr. Mooney pending the outcome of his appeal will not harm the Government's interests in the slightest. If his appeal is not resolved in his favor, then he must simply return to prison. No one has ever argued that Mr. Mooney is a flight risk, and he would of course immediately return to prison if the matter is resolved against him. The risks of keeping Mr. Mooney in prison in the current environment are far more disturbing. As discussed below, we now face the specter of an

[8] The notation "Tr., Vol. __, p. __" refers to the volume and page number of the trial transcript. (Dkt. Nos. 102-109.)

unlawfully imprisoned man, a situation that is not in the interests of anyone—including the Government.

6. *The Government's speculation as to the uncertain outcome in this case lends credence to Mr. Mooney's request for release pending appeal.*

The Government frequently accuses Mr. Mooney of "speculating" as to how the en banc Court of Appeals will decide his case. (Dkt. No. 116, p. 14 n.7.) Ironically, the Government is guilty of that very sin. That is, the Government continually speculates that the Court of Appeals will rule against Mr. Mooney as to Blakely issues, as to which Guidelines version to use, as to the amount of gain, and as to just about every issue raised by Mr. Mooney. But, once again, this analysis ignores the correct legal standard—whether Mr. Mooney has raised a "substantial question" of law that might well be resolved in his favor (i.e., an issue that could go either way), which would result in a sentence that is equal to or less than the term of incarceration he has already served. Powell, 761 F.2d at 1232.

In truth, there is no way to predict how the Supreme Court will rule in Booker, nor can we divine how the en banc Eighth Circuit Court of Appeals will decide Mr. Mooney's case. But we can all be quite certain that there exists a "substantial question" that these decisions might well be resolved in Mr. Mooney's favor, "in the sense that it is a close question or one that could go either way." Powell, 761 F.2d at 1233-34.

As demonstrated by the analysis above, it is quite possible that the en banc Court of Appeals will hold that Mr. Mooney must be resentenced using the 2001 version of the Guidelines, disregarding unconstitutional judge-found facts, such as amount of gain, etc. Indeed, this would be consistent with court decisions which hold that judge-found sentencing enhancers are unconstitutional under the Federal Guidelines, but that the defendant may be sentenced based

upon the Guidelines base level authorized by the findings of the jury. E.g., United States v. Ameline, 376 F.3d 967, 983 (9th Cir. 2004).

Mr. Mooney began serving his sentence in October 2002. It is now November 2004. The Court has indicated that it will not rule on Mr. Mooney's motion for release until December 2004. If Mr. Mooney is released in December 2004, he will have spent 26 months in prison. Thus, because a proper analysis may well put Mr. Mooney's proper sentence at 24 months or less, Mr. Mooney may already be serving a longer sentence than permitted under the law. For this reason, Mr. Mooney again respectfully request release pending the outcome of his appeal.

## CONCLUSION

It is in no one's interest—not the Court, not the Government, nor anyone else—to deprive a man of his liberty, only later to discover that the man's legal sentence was shorter than the time he had already served. Here, the current situation carries an unacceptably high risk of that very scenario playing out. The current situation—an atmosphere of profound uncertainty in the Federal Sentencing Guidelines—is precisely of the type where a court ought to err on the side of caution, and release a defendant pending the resolution of vexing legal questions. For this reason, Mr. Mooney again respectfully requests the Court release him, pending the unpredictable resolution of these legal questions and application thereof on his sentence.

Dated: November 22, 2004

**s/Jon M. Hopeman**
Jon M. Hopeman, MN #47065
Eric J. Riensche, MN #309126
Attorneys for Defendant Michael A. Mooney
Felhaber, Larson, Fenlon & Vogt, P.A.
220 South Sixth Street, Suite 2200
Minneapolis, MN 55402-4504
Telephone: (612) 339-6321
Fax: (612) 338-0535