UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 00-365 (JMR/FLN)
Civil No. 07-2802 (JMR)

| | | |
|---|---|---|
| MICHAEL ALAN MOONEY, | ) | |
| | ) | |
| Petitioner, | ) | GOVERNMENT'S RESPONSE TO |
| | ) | DEFENDANT'S MOTION TO |
| v. | ) | VACATE, SET ASIDE, OR |
| | ) | CORRECT HIS SENTENCE |
| UNITED STATES OF AMERICA, | ) | PURSUANT TO 28 U.S.C. § 2255 |
| | ) | |
| Respondent. | ) | |

The United States of America, appearing through its attorneys, Rachel K. Paulose, United States Attorney, and Erica H. MacDonald, Assistant United States Attorney, hereby submits the following response in opposition to petitioner Michael Alan Mooney's motion to vacate or reduce his sentence pursuant to 28 U.S.C. § 2255.

**FACTS**

In 1995, Petitioner Michael Alan Mooney was Vice-President of Underwriting for United HealthCare Corporation (hereinafter "United HealthCare"), one of the largest health care management services in the country. (Trial Transcript (hereinafter "Tr.") vol. 3, 25.) In that year, United HealthCare was exploring the possibility of acquiring competitor The MetraHealth Companies, Inc. (hereinafter "MetraHealth"). (Tr. vol. 1, 93.) Mooney was one a small group of company officials conducting a confidential financial analysis of the potential acquisition. (Tr. vol. 3, 6.) As a part of this analysis, Mooney spent six days examining MetraHealth's confidential financial records, membership projections, and cost data and assumptions. (See id., 20-33; Gov't Ex. 11.)

On May 25, 1995, nine days after returning from his inspection of MetraHealth's records, Mooney began to purchase large numbers of "call" options on United HealthCare stock. Over the next three weeks, Mooney purchased the right to buy 40,000 shares of stock at $35/share. In the first two days after the merger became public on June 21, the value of United HealthCare shares rose to $44 5/8. (Tr. vol. 2, 25; Ex. 76.) Soon thereafter, the SEC became aware of Mooney's early "bullish" position in call options (Tr. vol. 4, 58-59) and requested further information regarding the trades from United HealthCare (Id., 60). United HealthCare General Counsel David Lubben questioned Mooney about the matter, but Mooney flatly denied any trading. (Id., 63-64.)

On December 19, 2000, a federal grand jury charged Mooney with eight counts of mail fraud under 18 U.S.C. §§ 1341 and 1346 and four counts of securities fraud by insider trading under 15 U.S.C. §§ 78j(b) and 78ff(a). (Docket No. 1.) On March 15 a superceding indictment added five counts of engaging in a monetary transaction in criminally derived property under 18 U.S.C. § 1957. (Docket No. 29.)

The case was tried to a jury. Jon Hopeman, an experienced trial lawyer and a former Assistant United States Attorney, represented Mooney. Mooney's position at trial, as presented by Hopeman, was that Mooney engaged in the suspicious transactions due to a margin call in a brokerage account Mooney maintained, rather

than on the basis of the inside information. (Tr. vol. 8, 28.) Hopeman argued that the margin call forced Mooney to sell United HealthCare stock from the account, and that Mooney then purchased the calls as a way to maintain his position in the stock. (Id. at 30.) However, neither of the witness from Mooney's brokerage could testify that Mooney had received a margin call, (Tr. vol. 3, 171-85; vol. 4, 3-53; vol. 6, 12-30), and Mooney's own financial records likewise contained no indication that the brokerage had ever issued a margin call, (Exs. 36-42, 44-51, 53-61). The government also presented information that Mooney had been in margin trouble repeatedly in the past, but had failed to address it. (Tr. vol. 6, 26-30.)

On October 30, 2001, a jury returned a verdict of guilty on all counts, and the Honorable James M. Rosenbaum, Chief Judge for the District of Minnesota, sentenced Mooney to forty-two months of imprisonment. The court also imposed a $150,000 criminal fee and issued a forfeiture order of $70,000.

Mooney appealed to the United States Court of Appeals for the Eighth Circuit, again represented by Mr. Hopeman. United States v. Mooney, 401 F.3d 940 (8th Cir. 2005.) He sought "a judgment of acquittal because of insufficient evidence, a new trial because of evidentiary error, or resentencing." Id. at 942. The Court of Appeals affirmed his conviction. Id. Several months later it considered and rejected a challenge to Mooney's sentence based on

United States v. Booker, 543 U.S. 220 (2005). United States v. Mooney, 425 F.3d 1093, 1095 (8th Cir. 2005).

Following this defeat, Mooney petitioned the Eighth Circuit for rehearing en banc, making many of the same arguments he now presents in his motion under § 2255. (Petr.'s Pet. Reh'g En Banc, Oct. 21, 2005.) He argued that "[i]t [wa]s not possible for a rational fact finder to determine beyond reasonable doubt" that his proffered legitimate reason for the trades was untrue. (Id. at I.) He also alleged a series of false statements by the prosecutor. (E.g., id. at 5-6.) The Eighth Circuit denied the petition for rehearing.

Mooney then filed a petition with the United States Supreme Court for certiorari, which the Court denied. Mooney v. United States, 126 S. Ct. 2889 (2006). This motion under 28 U.S.C. § 2255 follows.

## ARGUMENT

Mooney alleges five grounds for his motion to vacate or reduce his sentence. (Petr.'s Br. Attach. 1, 1.) First, he argues that the guilty verdict against him was plainly erroneous. Id. Second, he argues that his sentence should be vacated due to prosecutorial misconduct in the form of certain statements he alleges to be false. Id. Third, he argues that he suffered inadequate assistance of counsel because his attorney failed to combat the alleged prosecutorial misconduct and made other errors. Id. at 2.

The fourth and fifth alleged grounds request relief based on the severity of his sentence. Id. This Response addresses each of these points in turn.

## I. THE JUDGMENT AGAINST MOONEY SHOULD NOT BE VACATED AS PLAINLY ERRONEOUS WHERE MOONEY HAD THE OPPORTUNITY TO CONTEST THE SUFFICIENCY OF THE EVIDENCE ON DIRECT APPEAL.

This Court should not vacate the judgment against Mooney as plainly erroneous. Mooney contends:

> [T]he record is clear that there were margin account issues, black out policy issues and employee stock option exercise issues that were not considered and/or understood by either the prosecutor or the defense counsel. Because the lawyers did not fully understand much of this information, the jury was not given the opportunity to fairly consider this case.

(Id. at 1.) In addition to the claims of prosecutorial misconduct and ineffective assistance of counsel, addressed below, Mooney's contention of plain error also appears to claim that the evidence on the record is insufficient to support the jury's verdict. However, Mooney's motion should not be granted for insufficient evidence because Mooney fully litigated this issue on direct appeal.

Where a petitioner had the opportunity to raise an argument on direct appeal, he cannot relitigate it under § 2255. English v. United States, 998 F.2d 609, 612-13 (8th Cir. 1993) ("English cannot use a section 2255 petition to collaterally attack the sufficiency of the evidence in his case, an issue resolved on direct appeal."). Mooney raised a challenge to the sufficiency of

the evidence on direct appeal, and the court ruled against him, holding the evidence sufficient to maintain the judgment. United States v. Mooney, 401 F.3d 940 (8th Cir. 2005). The court directly addressed the argument Mooney now raises, that he "had a reasonable and non-fraudulent explanation for his trades." (Petitioner's Brief (hereinafter Petr.'s Br.) Attach. 1, 1, June 12, 2007.) The court walked through the evidence casting doubt upon Mooney's purported nonfraudulent explanation, and held it sufficient for the trier of fact to find Mooney's explanation false. Mooney, 401 F.3d at 945. Because Mooney had the opportunity to fully litigate this issue on direct appeal, he cannot raise it again now as a basis on which to vacate the judgment against him.

## II. THE JUDGMENT AGAINST MOONEY SHOULD NOT BE VACATED FOR PROSECUTORIAL MISCONDUCT WHERE MOONEY HAD THE OPPORTUNITY TO RAISE THE ISSUE ON DIRECT APPEAL AND WHERE THE GOVERNMENT MADE NO IMPROPER OR PREJUDICIAL STATEMENTS.

This Court should not vacate the judgment against Mooney for prosecutorial misconduct. Mooney claims that the government committed misconduct by making nine false statements to the jury: (1) that Mooney could have solved his margin problem by exercising options on 17,760 shares; (2) that Mooney's sale of 20,000 shares did not solve his margin problem; (3) that Mooney had one margin problem continuously from April 3rd until May 17th and ignored it; (4) that Mooney used the most risky investment possible; (5) that Mooney was not in the same financial position after the trades as he would have been in without them; (6) that Mooney could only buy

calls by selling his 20,000 shares; (7) that Goldman Sachs predicted the United HealthCare acquisition of MetraHealth to increase earnings under every scenario; (8) that Wall Street loved the merger; and (9) that United HealthCare stock declined late in 1995 because other HMOs also declined. (Petr.'s Br. Attach. 4, 1-5.) Mooney argues that these "false statements . . . were significant enough to prevent a fair trial." (Petr.'s Br. Attach. 4, 1.)

This court should not grant Mooney's motion on this basis. Mooney cannot raise the issue of prosecutorial misconduct under § 2255 because he had the opportunity to raise this issue on direct appeal. Moreover, even should this Court choose to hear his arguments regarding prosecutorial misconduct, those arguments must fail because the government committed no misconduct, making no statements at trial that were in any way improper or prejudicial.

**A. Mooney had the opportunity to raise the issue of prosecutorial misconduct on direct appeal.**

This Court should not vacate the judgment against Mooney for prosecutorial misconduct because Mooney may not use a proceeding under § 2255 to address issues he had the opportunity to raise on direct appeal. "[S]ection 2255 is not a substitute for direct appeal, and matters which could have been raised on appeal will not be considered." United States v. Samuelson, 722 F.2d 425, 427 (8th Cir. 1983), quoted in United States v. Serpa, 930 F.2d 639, 640 (8th Cir. 1991). Defendants routinely argue prosecutorial

misconduct on appeal. E.g., United States v. Yu, 484 F.3d 979 (8th Cir. 2007); United States v. Palma, 473 F.3d 899 (8th Cir. 2007). Mooney could have done the same but evidently chose not to. See Mooney, 401 F.3d at 944. Just as Mooney cannot use § 2255 to relitigate a determination made on direct appeal, English v. United States, 998 F.2d 609, 613 (8th Cir. 1993), he cannot use it to second-guess a decision not to raise an issue, see Samuelson, 722 F.2d at 427. Moreover, Mooney already presented these accusations of false statements by the government to the Eighth Circuit in his petition for a rehearing en banc, (Petr.'s Pet. Reh'g En Banc, Oct. 21, 2005), which the court denied.

**B. The government committed no misconduct, making no statements that were either improper or prejudicial.**

This Court also should not vacate the judgment against Mooney for prosecutorial misconduct because the government committed no misconduct. In determining whether misconduct occurred, "[p]rosecutorial comments must be reviewed in context, and [courts] will reverse only if the defendant shows both that the comments were improper and that they resulted in prejudice." Herrin v. United States, 349 F.3d 544, 546 (8th Cir. 2003). In this case, none of the statements made by the government were improper. Moreover, even if Mooney's allegations of falsehood were true, none of them would be prejudicial.

**1. The government made no improper statements.**

Mooney's claim of prosecutorial conduct must fail because the

government made no improper statements. Courts do not lightly deem prosecutorial statements to be improper, and "will reverse only under exceptional circumstances." United States v. Mullins, 446 F.3d 750, 758 (8th Cir. 2006) (quoting United States v. Eldridge, 984 F.2d 943, 947 (8th Cir. 1993)). "'So long as prosecutors do not stray from the evidence and the reasonable inferences that may be drawn from it, they, no less than defense counsel, are free to use colorful and forceful language in their arguments to the jury.'" Mullins, 446 F.3d at 759 (quoting United States v. Robinson, 110 F.3d 1320, 1327 (8th Cir. 1997)); see also, United States v. Bolzer, 367 F.3d 1032, 1037 (8th Cir. 2004) (refusing to find prosecutorial misconduct where a statement was a permissible inference based on the evidence). A prosecutor may also "argue 'a personal interpretation of the evidence.'" Mullins, 446 F.3d at 760 (quoting United States v. White, 241 F.3d 1015, 1023 (8th Cir. 2001)). In addition, "fleeting comments that passed without objection during the rough-and-tumble of closing argument in the trial court should not be unduly magnified." Id. at 758.

Mooney's first six complaints of falsity, involving specific aspects of his margin account, have no merit. (Petr.'s Br. Attach. 4, 1.) Each of the prosecutorial statements to which he refers was a reasonable inference based on the evidence. The jury received substantial evidence on all aspects of Mooney's margin account, including the brokerage records from Mooney's account (Exs. 36-42,

44-51, 53-61) and testimony from brokerage employee William Kleckner (Tr. vol. 6, 12-30) and brokerage President Merle Levitt (Tr. vol. 3, 171-85 & vol. 4, 3-53). From this evidence, the jury could reasonably infer that by exercising options and placing the newly acquired equity into the account, Mooney could have solved his margin problem. (Compare Tr. vol. 4, 30, with Petr.'s Br. Attach. 4, 1.) It could infer that Mooney sold stock to buy calls, not to fix his margin problem. (See Tr. vol. 4, 47.) It could infer that Mooney had continually failed to address his margin problem in the past. (See Tr. vol. 6, 25-30.) It could infer that calls were an extremely risky investment. (See Government's Ex. 36.) And it could infer that Mooney's financial position after his trades was not the same as before them.

Mooney's remaining three allegations of falsehood are likewise meritless. They, too, are reasonable interpretations of the evidence. Based on the increase in share price, the jury could conclude that investors approved of the merger. (See Tr. vol. 8, 10-11.) The jury was free to believe that later falls in share price resulted from conditions in the HMO market. Finally, the jury could conclude that the projections undertaken by Goldman Sachs indicated an expectation of an increase in future profits.

**2. Mooney suffered no prejudice as a result of any statements by the government.**

Mooney's claim of prosecutorial misconduct must also fail because Mooney suffered no prejudice as a result of any allegedly

improper statement. To evaluate the possibility of prejudice, courts consider "'(1) the cumulative effect of the misconduct, (2) the strength of the properly admitted evidence of the defendant's guilt, and (3) any curative actions taken by the trial court.'" United States v. Yu, 484 F.3d 979 (8th Cir. 2007) (quoting United States v. Beckham, 222 F.3d 512, 526 (8th Cir. 2000)). "The relevant question, ultimately, is whether the prosecutor's comments, if improper, 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" United States v. Mullins, 446 F.3d 750 (8th Cir. 2006) (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)).

None of Mooney's allegations of falsehood could result in a prejudicial denial of due process. Even if shown to be improper, the cumulative impact of all of these statements is negligible. Mooney was convicted of purchasing call options on the basis of material inside information. None of the accusations of falsehood touch upon that transaction. (Petr.'s Br. Attach. 4.) Instead, allegations 1, 2, 3, and 6 address Mooney's motivation in selling stock prior to his purchase of the calls, rather than his motivation in buying the calls themselves. (Id. at 1.) The other allegations address the expectation of financial gain surrounding the merger. But Mooney merely argues that these expectations carried some uncertainty, (Id. at 1-5), which is of minimal probative value after the jury has already determined that Mooney

made his trades with the expectation of gain.

Additionally, the evidence of the defendant's guilt easily overwhelms the evidence supporting the defendant's theory of the case. Mooney dramatically increased his position in United HealthCare stock within days of his acquisition of material, inside information. When asked about his trades by United HealthCare's general counsel, Mooney failed to offer the explanation he provided at trial, opting instead to deny the trades entirely. Mooney's financial records and the testimonies of representatives of his brokerage failed to provide any evidence that Mooney ever received a margin call. (Exs. 36-42, 44-51, 53-61; Tr. vol. 3, 171-85; vol. 4, 3-53; vol. 6, 12-30.) The strength of this evidence supporting the jury's verdict overrides any negligible cumulative impact from the allegedly prejudicial statements.

Finally, this Court took appropriate action to protect against any prejudice that might result from comments by the attorneys. Before opening arguments, the Court gave the jury a lengthy instruction regarding what it should consider in reaching its verdict. It noted that "the arguments are not evidence, including the closing arguments." (Tr. vol. 1, 4.) Second, before closing arguments, the Court again stated: "I remind you, as I did before, that arguments of course are not part of the evidence. You may take note of the closing arguments if it pleases you, but they are not part of the evidence." (Tr. vol. 8, 3.) Third, while charging

the jury, the Court stated: "Statements, arguments, the lawyers' question or their comments, as they represent their parties, are not part of the evidence." (Tr. vol. 8, 63.) These instructions ensured that the jury reached its verdict of guilty based upon the evidence presented in the case, not upon any statements, improper or not, by the attorneys. Because the government made no improper statements and Mooney suffered no prejudice, this Court should not grant Mooney's motion on the basis of prosecutorial misconduct.

## III. THE JUDGMENT AGAINST MOONEY SHOULD NOT BE VACATED FOR INEFFECTIVE ASSISTANCE OF COUNSEL WHERE MOONEY RECEIVED EFFECTIVE REPRESENTATION.

The judgment against Mooney should not be vacated for ineffective assistance of counsel. To be ineffective, a defendant's attorney must be so unreasonably deficient as to overcome a strong presumption that the alleged errors were merely a reasonable trial strategy. Each error alleged by Mooney, however, fails to show such unreasonable conduct. As a result, this Court should not find that Mooney received ineffective assistance.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate two components. "First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient

performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). Where, as here, the petitioner fails to show deficient performance, he cannot prevail, and a court need not determine whether the alleged deficiency would be prejudicial.

A determination as to whether the performance of a defendant's counsel was deficient "must be highly deferential." Id. at 689. The Court warned: "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. To protect against this tendency, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. These allegations must be strong enough to overcome "the presumption that . . . the challenged action 'might be considered sound trial strategy'" and the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

Even under a much less deferential standard, a court could not find that Hopeman provided deficient assistance. Mooney makes six allegations of ineffective assistance. The first, second, and fourth allegations fault Hopeman for failing to counter the prosecutorial statements alleged to constitute misconduct.

(Petr.'s Br. Attach. 5, 1.) However, as these statements were not improper, Hopeman cannot have provided constitutionally defective counsel by failing to rebut them. See Herrin v. United States, 349 F.3d 544, 547 (8th Cir. 2003).

The third, fifth, and sixth allegations fault Hopeman for not presenting certain information on trading limitations, presenting certain "almost illegible" exhibits and "confusing" testimony, and failure "to undermine the credibility of the government's case" by showing that the government "d[id]n't understand key points." (Petr.'s Br. Attach. 5, 1-2.) These allegations merely represent "second-guessing" by Mooney. To argue that an attorney should have used clearer exhibits, less "confusing" testimony, or a strategy of impugning government credibility by demonstrating its lack of understanding is to engage in subjective evaluations that fail to raise an objective complaint of unreasonableness. Cf. Willis v. United States, 87 F.3d 1004, 1006 (8th Cir. 1996) ("In hindsight, there are few, if any, cross-examinations that could not be improved upon. If that were the standard of constitutional effectiveness, few would be the counsel who performance would pass muster."). Because the performance of Mooney's attorney was not deficient, this Court should not grant Mooney's motion on the basis of ineffective assistance of counsel.

## IV. MOONEY'S SENTENCE SHOULD NOT BE REDUCED WHERE HE FAILS TO MAKE ANY ARGUMENT THAT HIS IMPRISONMENT IS WRONGFUL.

Mooney's fourth and fifth alleged grounds for relief under

§ 2255 fail to make any argument that his incarceration is wrongful. The fourth essentially argues that his sentence should be reduced because of the severity of his sentence, because his sentence was interrupted pending appeal, and because of his good behavior. The fifth requests the elimination of his fine because he has no assets with which to pay the fine and because he wishes to support his seventy-three-year old mother. Neither of these arguments state a claim for relief under 28 U.S.C. § 2255.

**CONCLUSION**

For the foregoing reasons, this Court should deny Mooney's motion under 28 U.S.C. § 2255.

Respectfully submitted,

Dated: August 15, 2007

RACHEL K. PAULOSE
United States Attorney

s/Erica H. MacDonald
BY: ERICA MACDONALD
Assistant United States Attorney