# NEW ACCOUNT REPORT

Q & R CLEARING CORPORATION

1. TYPE OR PRINT (USE BALL PEN ONLY) INFORMATION COMPLETELY.
2. SEND ORIGINAL TO NEW ACCOUNT DEPT.
3. SECOND COPY TO BE RETAINED BY BRANCH/RR.

DO NOT WRITE ABOVE THIS POINT

MR. MRS. MISS: Michael Mooney

BRANCH: 300 | ACCOUNT: 34102 | T: 1 | C: 8 | RR: 009

DATE ACCOUNT OPENED: 1/31/90

SOC. SEC. NO. OR TAX IDENT. NO.: 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

ADDRESS (IF PO BOX, CUSTOMER'S HOME ADDRESS MUST ALSO BE ENTERED): 3537 Hillsboro Av N Mpls Mn 55427

HOME TEL. ( ): 936-4909

MAIL TO (CHECK ONE): ☒ HOME ☐ BUSINESS

EMPLOYER'S NAME AND ADDRESS: United Health Care

BUSINESS PHONE: 936-4909

TYPE OF BUSINESS:

OCCUPATION: Dir Underwriting

DATE OF BIRTH: 21+

U.S. CITIZEN: ☒ YES ☐ NO

IF NO, WHAT COUNTRY?

MARRIED: ☐ YES ☒ NO

RELATED TO Q & R EMPLOYEE: ☐ YES ☒ NO

NAME:

SPOUSE'S NAME:

SPOUSE'S EMPLOYER:

OCCUPATION:

TYPE OF ACCOUNT: ☒ CASH ☐ MARGIN ☐ OPTIONS

NATURE OF ACCOUNT (CHECK ONE): ☐ INDIVIDUAL ☐ JOINT ☐ TRUST ☐ ESTATE ☐ CORP ☐ CUSTODIAN ☐ IRA/KEOGH ☐ PARTNERSHIP ☐ INVESTMENT CLUB

CUSTOMER'S INVESTMENT OBJECTIVES (INDICATE WHERE MORE THAN ONE)

APPRECIATION: ☐ LONG TERM ☐ SHORT TERM ☐ INCOME ☐ SAFETY ☐ SPECULATIVE ☐ BUSINESS RISK ☐ OTHER (SPECIFY)

INITIAL TRANSACTION (SPECIFY BOUGHT OR SOLD):

NAME & ADDRESS OF BANK BROKER OR COMMERCIAL REFERENCE: Norwest

RELATED A/C #: J Minnich

HOW LONG KNOWN:

TRADING AUTHORIZATION: ☐ YES ☒ NO

AGENT'S EMPLOYER & OCCUPATION:

AGENT'S NAME:

SALESMAN'S SIGNATURE: [signature]

RELATION TO CLIENT:

BRANCH MANAGER SIGNATURE: [signature]

DIRECT COMMUNICATIONS RULE 14b-1(c): ☐ CLIENT DOES OBJECT TO DISCLOSURE

BUY INSTRUCTIONS: ☒ TRANSFER AND SHIP ☐ D.V.P. ☐ HOLD FIRM NAME

SELL INSTRUCTIONS: ☐ CREDIT ACCOUNT ☒ SEND CHECK ☐ R.V.P.

DIVIDEND INSTRUCTIONS: ☒ AUTOMATIC ☐ CREDIT ACCOUNT

DUPLICATE CONFIRMATION/STATEMENT TO:

DUPLICATE CONFIRMATION/STATEMENT TO:

DUPLICATE CONFIRMATION/STATEMENT TO:

DVP/RVP INSTRUCTIONS:

FORM QR110 - (REV. 3/88) - 50M

N.Y. OFFICE

GOVERNMENT EXHIBIT 36 00-365 (JMR)

0004285

SCANNED MAY 28 2008 U.S. DISTRICT COURT ST. PAUL

# U.S.Clearing CORP.

*Member New York Stock Exchange*
120 Broadway New York, N.Y. 10271-0046

## MARGIN AGREEMENT

A/C No. 300-34102

TO: U.S. CLEARING CORP. AND,
TO: THE INTRODUCING BROKER (MY BROKER)

1. I agree as follows with respect to the margin account I have opened with you for the purchase and sale of securities and/or the borrowing of funds.

2. I am of legal age and no one except the undersigned has any interest in this account.

3. All transactions for my account shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market (and its clearing house, if any) where executed.

4. Any and all securities or commodities or contracts relating thereto and all other property of whatsoever kind belonging to me or in which I may have an interest held by you or carried for my account shall be subject to a general lien for the discharge of my obligations to you, however arising and without regard to whether or not you have made advances with respect to such property, and without notice to me may be carried in your general loans and may be pledged, re-pledged, hypothecated or re-hypothecated, separately or in common with other securities and commodities of any other property, for the sum due to you thereon or for a greater sum and without retaining in your possession and control for delivery a like amount of similar securities, commodities or other property.

5. I will maintain such margins as you may in your discretion require from time to time and will pay on demand any debit balance owing with respect to any of my accounts and I will, at your request from time to time, deposit such additional collateral as may be required by the rules of any exchange or regulatory agency or as may be considered necessary or appropriate, in your discretion, to secure my obligations to you. You may, whenever in your discretion you consider it necessary for your protection, sell any of all securities or commodities or contracts relating thereto held in any of my accounts, including safekeeping accounts, and you may borrow or buy in any securities or commodities required to make delivery against any sale effected for me. Such sale or purchase may be public or private and may be made without advertising or notice to me and in such manner as you may in your discretion determine and at any such sale you may purchase the property free from any right of redemption and I shall be liable for any deficiency.

6. I agree to pay interest and service charges upon my account monthly at the prevailing rate as determined by you. The interest charged on the average debit balances appears on the monthly statement and indicates rate and period covered. The rate may change from time to time without notice due to fluctuations in money market rates or from other causes. It is computed by the ordinary interest method, which assumes a year to have 360 days. The actual number of days within the period is used as the numerator.

7. I agree that, in giving orders to sell, all "short" sale orders will be designated as "short," and all "long" sale orders will be designated as "long," and that the designation of a sell order as "long" is a representation on my part that I own the security, and if the security is not in your possession, that it is then impracticable to deliver the security to you forthwith and that I will deliver it as soon as possible.

8. Reports of the execution of orders and statements of my account shall be conclusive if not objected within five days and ten days, respectively, after transmittal to me by mail or otherwise.

9. At any time and from time to time you may, in your discretion, without notice to me, apply and/or transfer any securities, commodities, contracts relating thereto, or any other property or equity therein, interchangeably between any of my accounts, whether individual or joint from any of my accounts to any account guaranteed by me.

10. This agreement shall inure to the benefit of your successors and assigns, shall be binding on the undersigned, his heirs, executors, administrators and assigns, and shall be governed by the laws of the State of New York.

11. AGREEMENT TO ARBITRATE ALL CONTROVERSIES

**I represent that I understand the terms of the arbitration clause, as follows:**

**(a) Arbitration is final and binding on the parties.**
**(b) The parties are waiving their right to seek remedies in court, including the right to jury trial.**
**(c) Pre-arbitration discovery is generally more limited than and different from court proceedings.**
**(d) The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.**
**(e) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.**

**The undersigned agrees, and by carrying an account of the undersigned you agree, that all controversies which may arise between us, including but not limited to those involving any transaction or the construction, performance, or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration. Any arbitration under this agreement shall be conducted before the New York Stock Exchange, Inc. ("NYSE") or the National Association of Securities Dealers, Inc. ("NASD"), and in accordance with its rules then in force. I may elect in the first instance whether arbitration shall be conducted before the NYSE or the NASD, but if I fail to make such election, by registered letter or telegram addressed to you at your main office, before the expiration of five days after receipt of a written request from you to make such election, then you may make such election. Judgement upon the award of arbitrators may be entered in any court, state or federal, having jurisdiction.**

## LENDING AGREEMENT

12. You and any firm succeeding to your firm are hereby authorized from time to time to lend separately or together with the property of others either to yourselves or to others any property which you may be carrying for me on margin. This authorization shall apply to all accounts carried by you for me and shall remain in full force until written notice or revocation is received by you at your principal office in New York.

BY SIGNING THIS AGREEMENT, I ACKNOWLEDGE THE FOLLOWING: (1) THAT, IN ACCORDANCE WITH PARAGRAPH #11 I AM AGREEING IN ADVANCE TO ARBITRATE ANY CONTROVERSIES WHICH MAY ARISE WITH YOU, AND (2) RECEIPT OF A COPY OF THIS AGREEMENT.

_______________________ (applicant's signature)

_______________________ (signature of co-applicant)

0004286

U.S. Clearing
Member New York Stock Exchange, Inc.
120 Broadway
New York, New York 10271-0046

| Account Number | Name of Account |
|---|---|
| [illegible] | [illegible] |

AND
TO: THE INTRODUCING BROKER (MY BROKER)

Gentlemen:

This option agreement sets forth our respective rights and obligations arising in connection with any transaction by you on my behalf including but not limited to, the purchase and sale of put and call options:

1. I wish to commit a portion of my funds to trading in options. I consider myself sophisticated in investment matters and am able to read and understand confirmation and monthly statements. I realize and understand that any form of option trading has a number of risks connected therewith. I understand that the risk associated with option trading is extremely high, and in maintaining an option account and engaging in option trading through the facilities of your firm, I am engaging in transactions of a speculative nature. In investing in an option contract, I am speculating that the price of the underlying security will not only move in the direction which I anticipate (i.e., the price will move up in the case of a call option and will move down in the case of a put option), but that the price move of the underlying security will also exceed the premium which I pay for the option, commissions and other transaction costs. Thus, if the price movement is not sufficient, I could lose my entire investment in the option contract. If I write an option contract without depositing or owning the underlying security, I realize that my risk of loss is potentially unlimited. Notwithstanding this risk of loss I agree to honor all assignments and deliver to you the underlying security in the prescribed time, and if I fail to deliver the underlying security in the proper time, I designate you to act as my agent and buy in such stock at the current market price so that I may honor my commitment to deliver. I understand that my account will be debited for any loss and that you will charge me a commission and a fee for this service. I have sufficient income and other assets to sustain the risks inherent in such investments.

2. I understand that I may not write calls (sell options) on restricted stock, which I own as an insider.

3. I am familiar with the risks of option trading, and you shall not be held liable for such risks in connection with the execution, handling, purchasing, selling, exercising and endorsement of options for my account.

4. Where I am long an option which is about to expire in the money, you are authorized, in your sole discretion and without notification to me, to exercise the option and liquidate the underlying stocks for my account, using your best efforts. This is in no way to be construed as an obligation on your part to sell or exercise such option on behalf of my account, and I therefore waive any and all claims for damages or loss which I may incur at any time against you arising out of the fact that any option in my account(s) was not exercised, unless I instructed you to do so.

5. I have previously received from you a prospectus from the Option Clearing Corporation (OCC) and any supplement thereto and I acknowledge your procedures regarding the latest hour at which exercise notices will be accepted by you. These procedures are as follows: Notice of exercise instructions must be given to you on normal business days not later than 4:45 p.m. Eastern Time. You will not be held liable for failure to tender an exercise if such notice is not received within the aforementioned time limitations. If I am an option writer, I understand that I am still liable for exercise against me within one business day following the expiration of the option contract.

6. I understand that should I have any open short position in options during the month of expiration which is in the money or near the exercise price, it is most likely it will be assigned on my short position and that as a writer of an Option I may receive a Notice of Assignment as late as one or two business days following the expiration date. Therefore, I should not take any action until being assured by you that you have received all notices of Assignment for your accounts from the Options Clearing Corp., and that the particular open short Options in the accounts have or have not been called. I also understand that notices of Assignment for option contracts are allocated among customers on a random selection basis and that a more detailed description of your allocation procedure is available upon request.

7. I have read and am familiar with the OCC prospectus and any supplement thereto and agree to abide by all rules of the OCC, or any securities exchange rules governing options transactions, including but not limited to position and exercise limit rules. Under the position limit rules, unless some different provision has been made by the OCC for a particular stock, no single investor or a group of investors acting in concert (regardless of whether the options are held in one or more accounts or through one or more brokers) may hold more than 2,000 option contracts covering the same underlying stock on the CBOE or Amex, etc. Under the exercise limit rules, unless otherwise determined and announced by the OCC, no holder or group of holders acting in concert, within any five consecutive business days, may exercise more than 2,000 options covering the same underlying security.

8. I agree to maintain in my account(s) with you such margin as you deem necessary or advisable, which may be changed by you from time to time, for the protection of your position as endorser of option contracts issued pursuant to my orders [illegible]

margin calls you are authorized, in your discretion and without notification to me, to take such action as you may deem appropriate to protect the position and obligation which you may have assumed at my request. This authorization is intended to include (without limitation thereby) the purchase and sale for my account and risk of any part or all of the shares represented by options endorsed by you at my request, and the purchase for my account and risk of such additional puts and calls as you may deem necessary to fully protect yourselves. Any securities and funds held by you in any account of mine with you shall be held by you as security for the performance by me of my obligation to you under this agreement.

9. This agreement is supplementary to a Margin Agreement simultaneously or heretofore entered into between us and shall in no event be deemed to abrogate or in any other way diminish any of your rights under the Margin Agreement; provided, however, that in the event of any conflict between the terms of this agreement and the terms of the Margin Agreement the provisions of this agreement shall prevail.

10. You shall not be liable for loss caused directly or indirectly by government restriction, exchange or market rulings, war, strikes, or any other conditions beyond your control.

11. The provisions of this agreement shall apply to all put options, call options, or other options which may have previously purchased, sold, executed, handled, endorsed or carried for my account(s) and shall also apply to all put options, call options or other options which you may hereafter purchase, sell, handle, endorse or carry for my account(s) and shall inure to the benefit of your firm as now or hereafter constituted.

12. You are under no obligation to convey to me any information relating to the underlying securities covered by any options in my account(s) or any securities related thereto, or any information relating to the option, whether such information is then or thereafter known or available. I understand that any information, advice or notification in respect to any option or any underlying securities or securities related thereto which you may give me and which you are not required to give by the terms of this agreement, express or implied, shall not be construed as creating an implied agreement or course of dealing between us and shall not impair the provisions of this or any other agreement between us.

**13. AGREEMENT TO ARBITRATE ALL CONTROVERSIES**

**I represent that I understand the terms of the arbitration clause, as follows:**

**(a) Arbitration is final and binding on the parties.**

**(b) The parties are waiving their right to seek remedies in court, including the right to jury trial.**

**(c) Pre-arbitration discovery is generally more limited than and different from court proceedings.**

**(d) The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.**

**(e) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.**

**The undersigned agrees, and by carrying an account for the undersigned you agree, that all controversies which may arise between us, including but not limited to those involving any transaction or the construction, performance, or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration. Any arbitration under this agreement shall be conducted before the New York Stock Exchange, Inc. ("NYSE") or the National Association of Securities Dealers, Inc. ("NASD"), and in accordance with its rules then in force. I may elect in the first instance whether arbitration shall be conducted before the NYSE or the NASD, but if I fail to make such election, by registered letter or telegram addressed to you at your main office, before the expiration of five days after receipt of a written request from you to make such election, then you may make such election. Judgment upon the award of arbitrators may be entered in any court, state or federal, having jurisdiction.**

14. I shall be responsible for all expenses incurred by you, including reasonable attorneys' fees in enforcing any provision of or collecting any amounts due you under this agreement.

15. Unless I give specific instructions as to where to direct orders, I hereby authorize you or the introducing broker to select the exchange or market to which my orders are directed.

16. I understand that firms clearing through you may from time to time purchase for their own account options, or securities underlying options, recommended to me.

17. I understand that my options account [illegible]