O2-000-365(1) JMR

# Request for Certificate of Appealability
# Case: 02-3388

## Status

On June 13, 2007 petitioner filed a 2255 motion with the Minnesota District Court. The motion made several claims and contained very specific documentation of trial evidence to support those claims. In August, the government responded to the petition and did not show where any of the evidentiary documentation was in error.

On May 9, 2008 the District Court denied the 2255 motion. The court also refused to issue a Certificate of Appealability. The court did not show where any of the petitioner's evidentiary documentation was in error.

Petitioner is now asking the Appeals Court for a Certificate of Appealability. Copies of the 2255 motion and related documents are attached.

# Why Consider the 2255?

The Appeals Court should consider this 2255 petition because this is the first and only time that the defendant can raise issues and not be harmed by the fact that defense counsel, both at trial and on appeal, did not have an understanding of how margin accounts work.

At trial the government prosecutor was surprised by and caught off guard by defendant's margin account issues. He was most of the way through his case before he even knew the margin issues existed. He did not get much time to prepare a reaction. In an attempt to overcome this mid-trial surprise, the prosecutor delivered several false claims to the jury that were contrary to the admitted evidence.

Because the defense counsel also lacked margin account expertise, he failed to correct these false claims, either at trial or on appeal. Because of defense counsel's inaction, the jury considered several false claims as true and the Appeals Panel decision that affirmed the conviction contained erroneous conclusions about the defendant's margin issues.

RECEIVED
MAY 23 2008
U.S. Court of Appeals
Eighth Circuit-St. Paul, MN

SCANNED
MAY 28 2008
U.S. DISTRICT COURT ST. PAUL

The defendant was accused and convicted of an insider trading scheme that allegedly involved selling shares in order to buy calls in anticipation of stock price gains from a merger. The most important piece of the defense was the fact that the defendant was required to sell his stock when he did because of margin account rules and company policy. The defendant had a very rationale explanation for his trades and the explanation was unrelated to the alleged scheme.

There are at least three reasons/grounds for why the Appeals Court should consider this 2255.

## Reason/Ground #1

At trial, the prosecutor realized the significance of the "margin" part of the defense and attacked it strongly in his closing and his rebuttal. His attacks included several false statements that contradicted the evidence and which were devastating both to the margin arguments put forward by the defense as well as to the overall credibility of the defense. Defense counsel did not understand that several of the prosecutor claims were false and therefore did not object or in any way attempt to correct the record. The actions of the prosecutor were a case of misconduct and the defense counsel inaction is a case of inadequate assistance to the defense. This information is all clearly described and documented in the 2255 motion and attached documents.

## Reason/Ground #2

When the direct appeal was prepared, defense counsel still did not have an understanding of how margin accounts and stock option exercises work. He did not appreciate the significance of the false claims made by the prosecutor at trial. Defense counsel should have raised an appeal issue of misconduct but did not. Because the misconduct was so serious as to possibly drive the outcome of the trial, it should have been challenged for the Appeals Court to review. Because defense counsel should have presented this claim on appeal but did not – petitioner must now claim ineffective assistance with respect to the direct appeal.

## Reason/Ground #3

There is a third reason the Appeals Court should consider this 2255. On direct appeal, the Panel was misled by the prosecutor and therefore published erroneous information in the panel decision that affirmed the original conviction.

On direct appeal defense counsel appropriately raised the issue of insufficient evidence. He included the argument that Mooney made his trades because of margin account rules. The Appeals Panel summarily rejected the margin issue but did so using false and misleading information that the prosecutor had provided.

On pages 35 and 36 of his appeal brief the prosecutor told the Appeals Court that

- "defendant had not exceeded his margin on his account"
- "the simultaneous sale of shares and purchase of options did not even alter his margin balance" and
- "brokerage employee, Bill Kleckner, testified that the defendant did not in fact exceed his margin balance in April, May or June"

All three of these claims were absolutely false and were in direct conflict with the brokerage monthly statements in evidence as well as the testimony of the two stockbrokers.

On these same two pages (35 and 36) the prosecutor suggested to the Appeals Court that there was no margin issue because a formal margin call had not been made. This was misleading. The issue was not whether a margin call had been made. The issue was whether a margin problem had occurred which required the defendant to take action in order to prevent a margin call. The brokers had testified that their clients who had margin accounts knew when there was a problem and when they needed to take action. The brokers both testified that Mooney had a serious margin problem in early May.

The Panel, on page 7 of the 3/28/05 opinion, correctly concluded that a margin call had not occurred. Contrary to what the prosecutor suggested, that was not the key question. The key question was whether a margin problem had occurred that required action in order to prevent a margin call. In fact, a margin problem did occur.

The Panel also concluded that Mooney's margin requirements had not been violated prior to the May sale of shares. That was an erroneous conclusion based only upon the prosecutor's false claims in his appeal brief, not on the evidence.

The Panel also concluded that the sale of shares did not significantly affect Mooney's margin status. That was another erroneous conclusion based not on the evidence but on the prosecutor's misleading appeal brief (see 2255 submission).

Finally, the Panel concluded that it was reasonable to assume that Mooney's sale of shares had nothing to do with a margin problem. The District Court used this conclusion to support its own conclusion that the prosecutor's closing remarks about margin issues were in accordance with the evidence. It should be pointed out that even if it was said to be possible to conclude that Mooney traded for "scheme" reasons rather than margin reasons, that does not answer the question of whether the prosecutor's closing claims were false and misleading.

The prosecutor did eventually admit to some of this misleading when he was forced to respond to a pro se petition for rehearing but by then we had all wasted so much time on the Blakely/Booker sentencing fiasco that probably no one even noticed.

On 11/8/05 the prosecutor filed a response to a pro se petition for rehearing. In the footnote on page 6, he admitted that careful review of broker Kleckner's testimony did <u>not</u> support the prosecutor's earlier claim that Mooney had been in compliance with margin rules throughout May.

On the same page the prosecutor falsely claimed that the broker monthly account statements "did not provide adequate details to determine whether a margin requirement had ever been violated." That was false. The April month end statement showed a huge problem. The May month end statement showed the problem had been fixed. The prosecutor then went on to misrepresent the testimony of broker Levitt. All of the specific details of these questions/issues are dealt with in the 2255 submission.

Defense counsel was inadequate again by not effectively challenging the prosecutor's false claims to the Panel, either through his response brief or the petition for rehearing process.

In the interests of justice, the Appeals Court should review previous erroneous conclusions and what their impact might be on the 2255 claims.

# How/Why Did This Happen?

Context is an important part of any decision making process. How could all of these false and misleading claims that the defendant says occurred actually come about? It seems unlikely – certainly the trial judge is reluctant to conclude that this could happen.

It is true that both the prosecutor and the defense counsel are experienced trial lawyers. It is also true that, at least at the time of the trial and the appeal, neither had much knowledge about how margin accounts work. Three points seem relevant.

1. When the government prepared its case and went to trial the prosecutor had no idea that the defendant had margin account issues during the time in question. We know this from the evidence. The prosecutor had his seventh of ten witnesses testify to the wrong margin requirements. It wasn't until after cross of his seventh witness that the prosecutor became aware that there was a margin issue and that it was key to the defense. He was caught unprepared. Specific supporting evidence of this point is included with the 2255 submission (copies attached).

2. Defense counsel presented the margin explanation at defendant's request. Counsel, however, never understood it very well. Because neither the prosecutor nor the defense counsel understood margin accounts very well, the presentation of relevant evidence was very disorganized. The brokerage (Recom) monthly statements can answer all relevant questions but they were not presented effectively by either side. The questioning of the two brokers and the FBI expert was extremely disorganized and provided information that was about as clear as mud. Some of this "muddy" testimony is what the prosecutor used to mislead the Appeals Panel. If it is studied carefully, however, it is revealing. This is shown in the 2255 submission. If there is any interest in getting more clarification about the broker monthly statements or about their testimony, both brokers are still available for either a hearing or affidavit.

3. During closing arguments the prosecutor knew that he needed to attack the margin issue and he did with vigor. That is fine. What is not fine is that, perhaps because he was caught unprepared by this issue, he made several false statements to the jury that directly contradicted the evidence. These were strong statements and seriously wounded the defense. The defense counsel was

also caught unprepared, did not understand the inaccuracies of the prosecutor's claims and did nothing to object or to correct the record. Essentially this same scenario occurred during closing arguments and on direct appeal.

## Summary

Under potential penalty of perjury, the defendant states unequivocally that he was forced to sell his 20,000 shares of stock in May of the year in question because of margin rules and company black out policy. There was no other way to comply with the rules. The evidence (brokerage monthly statements as well as other admitted documents and testimony) shows this. If the government can show evidence that this is not true, I volunteer to plead guilty to perjury. The defendant provided specific detailed evidentiary support for every claim made in the 2255 submission. Neither the government response nor the District Court Denial Order gave one specific example of where a defendant's point about the evidence was wrong.

This is not a case of "preferring a different interpretation" as the trial judge has stated. There are three very simple questions that reveal what is important about the claims of this 2255 petition. Each of these questions can be answered only **YES** or **NO**. They can be answered by careful review of the brokerage monthly statements (including the month end numbers and the trades that are detailed). They can also be answered by careful and accurate review of the testimony of the two stockbrokers who were interpreting the monthly statements.

### Question #1

Did Mooney have a margin problem in May that the rules said he was required to satisfy? **Yes** or **No**

A. All evidence says the answer is **Yes.**

B. Through his seventh witness at trial the prosecutor told the jury the answer was No. At closing the prosecutor told the jury the answer was Yes and moved on to question 2. On direct appeal, the prosecutor told the Panel that the evidence showed the answer to be **No**. The Panel mistakenly believed this, wrote it into their decision, and never bothered with question 2 below. All of this is documented in the 2255 submission.

C. The trial judge never specifically dealt with this question.

## Question #2

Did Mooney have to sell his 20,000 shares in order to satisfy the margin problem described in question #1 above? **Yes** or **No**

A. All evidence says the answer is **Yes.**

B. This is where the most significant false statements to the jury were made. The prosecutor admitted several times in his closing that Mooney was well over his margin limit (confirming Yes to question #1 above and contradicting what he later told the Appeals Court). He then literally made up information when he told the jury that Mooney could solve his margin problem in other ways than by selling his 20,000 shares. He falsely told the jury that Mooney could have solved the margin problem by simply exercising and holding some employee stock options. This was false and prevented the jury from being able to consider the key defense arguments. It also made the defense look like they had lied to the jury. All of this is documented in the 2255 submission.

C. The trial judge never specifically dealt with this question.

## Question #3

When Mooney sold his 20,000 shares did it satisfy his margin problem? **Yes** or **No**

A. All evidence says the answer is **Yes.**

B. On this question the prosecutor misled the jury at closing and misled the Appeals Panel. He told the jury and the Appeals Court that when Mooney sold the shares it did not satisfy the margin problem. Careful review of the evidence shows that the prosecutor's claims directly contradicted the monthly statements and that he misconstrued the broker testimony. All of this is documented in the 2255 submission.

C. The trial judge never specifically dealt with this question.

# Conclusion

If the answer to each of these three questions is **Yes** then the defendant has an important case for the jury to consider. If the prosecutor misled the jury and the Appeals Panel about these answers, and if the defense counsel did nothing about it, then a fair trial did not occur.

Respectfully Submitted,

Michael A Mooney

Michael Alan Mooney
15565A – 26th Ave. No.
Plymouth, MN 55447
(612) 750-2757